FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

JUN 26 2008

DAVID J. MALAND, CLERK
BY
DEPUTY _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| INNOVATION VENTURES, LLC D/B/A LIVING ESSENTIALS, § § § | |
| Plaintiff, § | CIVIL ACTION NO. 4:08cv232 |
| § | |
| v. § | JURY DEMANDED |
| § | |
| ULTIMATE LIFESTYLES, LLC AND CUSTOM NUTRITION LABORATORIES, LLC, § § § | |
| Defendants. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Innovation Ventures, L.L.C. d/b/a Living Essentials ("Living Essentials" or "Plaintiff") files this Original Complaint asserting claims against Ultimate Lifestyles, LLC and Custom Nutrition Laboratories (collectively, "Defendants") for copyright infringement, counterfeiting in violation of 15 U.S.C. § 1114(1)(b) (Section 32 of the Lanham Act); trademark infringement in violation of 15 U.S.C. § 1114(1)(a) (Section 32 of the Lanham Act); false designation of origin, false advertising, and trade dress infringement in violation of 15 U.S.C. § 1125(a) (Section 43 of the Lanham Act), unjust enrichment under Texas law, tortious interference with prospective business relations under Texas law, and common-law trademark infringement and unfair competition under Texas law. Further, Plaintiff seeks a preliminary injunction and permanent injunction against Defendants under Rule 65 of the Federal Rules of Civil Procedure and Section 34 of the Lanham Act, 15 U.S.C. § 1116. In addition, Plaintiff respectfully requests that the Court award Plaintiff its actual damages under Texas law, and all damages available under 15 U.S.C. § 1117, exemplary damages, and recoverable attorney fees and costs, and declare this case exceptional and award Plaintiff its reasonable attorney fees under 15 U.S.C. § 1117.

## I. THE PARTIES

1. Plaintiff Innovation Ventures, L.L.C., d/b/a Living Essentials ("Living Essentials") is a limited liability company organized and existing under Michigan law with its principal place of business in the City of Novi, Michigan. The members of Living Essentials are citizens and residents of one of the following: the States of Michigan, Indiana or California.

2. Upon information and belief, Defendant Ultimate Lifestyles, L.L.C. ("Ultimate Lifestyles") is a Texas limited liability company with its principal place of business located at 1100 Summit Avenue, Suite 109, Plano, Texas 75074-8593, and a registered agent address of 680 Oakmont Circle, Fairview, Texas 75069. Upon information and belief, none of the members of Ultimate Lifestyles are citizens or residents of the States of Michigan, Indiana or California.

3. Upon information and belief, Defendant Custom Nutrition Laboratories, LLC ("CNL") is a Texas limited liability company with its principal place of business located at 2055 Luna Road, Suite 100, Carrollton, Texas 75006 and a registered agent address of 5526 Stonegate Road, Dallas, Texas 75209. Upon information and belief, none of the members of CNL are citizens or residents of the States of Michigan, Indiana or California.

## II. JURISDICTION AND VENUE

4. This Court has personal jurisdiction over Ultimate Lifestyles and CNL because, upon information and belief, Ultimate Lifestyles and CNL do business within the State of Texas and are engaged in continuous and systematic business within the Eastern District of Texas, including the commission of the wrongful acts alleged in this Complaint. Therefore, Ultimate Lifestyles and CNL are subject to the personal jurisdiction of this Court.

5. This Court has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and supplemental and pendent jurisdiction under 28 U.S.C. § 1367, as Living Essentials brings claims under the federal Copyright Act, 17 U.S.C. § 101 *et seq.*, and the

Lanham Act, 15 U.S.C. § 1051, *et seq*. This Court also has subject matter jurisdiction under 28 U.S.C. § 13332 because the amount in controversy exceeds $75,000.00 exclusive of interest, costs, and fees and by virtue of the diversity of citizenship of the parties.

6. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and § 1400 because a substantial part of the events, acts, and omissions giving rise to the action occurred in this district and Ultimate Lifestyles and CNL do substantial business in this district; therefore Defendants are subject to personal jurisdiction in this district.

### III. GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

**The 5 Hour Energy Product.**

7. Living Essentials develops and markets liquid energy supplements including without limitation a 2 oz. liquid energy supplement bearing the trademark 5 HOUR ENERGY (hereinafter "5 Hour Energy" or the "Product").

8. Living Essentials sells its 5 Hour Energy supplement at a variety of drug, grocery, health, and convenience stores throughout the United States and Canada. Living Essentials has federal trademark registration for its 5 HOUR ENERGY mark (Registration No. 3003077, attached as **Exhibit A**) (the "Mark").

9. Living Essentials' Mark is valid, properly registered, and Living Essentials' has exclusive ownership rights in the Mark.

10. Living Essentials' has exclusive rights to use the Mark in commerce or in connection with its goods or services and has continuously used this Mark since at least 2005 as a trademark for use with its Product.

11. This Mark symbolizes the business goodwill of Living Essentials and is an intangible asset of substantial commercial value.

12. Living Essentials is the current owner of the 5 Hour Energy packaging trade dress

used exclusively by Living Essentials since at least 2005 as packaging for its 5 Hour Energy Product, which is inherently distinctive and has become distinctive through the acquisition of "secondary meaning." The 5 Hour Energy packaging trade dress consists of the packaging illustrated at **Exhibit B.**

13. The 5 Hour Energy packaging trade dress is arbitrary, non-functional, and distinctive.

14. Living Essentials has a substantial proprietary interest in the Mark, allocates significant resources to advertising its product associated with the Mark, and has through time and effort developed a strong public awareness and brand recognition of its Mark.

15. Living Essentials also has a substantial proprietary interest in trade secrets relating to its 5 Hour Energy product and takes appropriate and reasonable measures to guard the secrecy of its trade secrets.

16. Living Essentials also has a properly registered and protected Copyright to a key portion of the 5 Hour Energy label. (Registration No. TX 6-833-514, attached as **Exhibit C**).

17. Among the measures taken by Living Essentials to protect its proprietary interest is to restrict the parties who are authorized to sell and distribute the 5 Hour Energy product. Living Essentials engages contract packagers. Once Living Essentials obtains the finished 5 Hour Energy product from the contract packager, Living Essentials then sells it directly to retail or to its authorized distributors for sale to the public. In this way, Living Essentials endeavors to maintain strict quality controls over the 5 Hour Energy product on the market, as well as controls over the pricing of authentic, non-counterfeit Product.

**Ultimate Lifestyles.**

18. Upon information and belief, Defendant Ultimate Lifestyles is engaged in the business of manufacturing, distributing, marketing, selling, and developing nutritional products,

including liquid energy supplements and products in competition with 5 Hour Energy.

19. Defendant Ultimate Lifestyles is not an authorized distributor of 5 Hour Energy.

20. Upon information and belief, Ultimate Lifestyles sells and markets a competing two ounce energy supplement, "NR-GIZE."

**CNL's Prior Unauthorized, Illegal Sales of 5 Hour Energy.**

21. CNL is a former contract packager for Living Essentials of the 5 Hour Energy product. There is litigation currently pending in Texas state court between Living Essentials and CNL relating to CNL's manufacture of the 5 Hour Energy product, under Cause No. CC-07-1415-E, pending in the County Court at Law No. 5, Dallas County, Texas (the "Texas State Court Litigation").

22. CNL, as with all other contract packagers engaged by Living Essentials to make the 5 Hour Energy product, is strictly prohibited from selling 5 Hour Energy product to anyone other than Living Essentials. CNL is not an authorized distributor of 5 Hour Energy.

23. Living Essentials terminated CNL as a contract packager because, among other things, Living Essentials alleges that CNL was making competing product in violation of the parties' agreements. The contract disputes between the parties are the subject of the separate Texas State Court litigation.

24. Shortly after the Texas State Court litigation between CNL and Living Essentials commenced, Living Essentials discovered that CNL, without Living Essentials' authorization, and through its Chief Executive Officer ("CEO") Alan Jones, wrongfully sold or offered to sell large quantities of 5 Hour Energy through Ultimate Lifestyles. In a written offer letter dated January 11, 2008, Alan Jones stated that he "authorize[s] Ultimate Lifestyles to sell the product to whomever they desire."

25. CNL's transfer of 5 Hour Energy to Ultimate Lifestyles was done without Living

Essentials' authorization and in violation of agreements between Living Essentials and CNL.

26. The product being sold by CNL was actually inventory of 5 Hour Energy product remaining in CNL's possession at the time of the termination of the parties' contract, which CNL had an obligation to return to Living Essentials.

27. To ensure that the remaining inventory of 5 Hour Energy product in the possession of CNL would not be distributed by CNL or improperly sold on the grey market, Living Essentials sought to repurchase this remaining inventory from CNL. CNL and Living Essentials began negotiating an agreement for Living Essentials to buy CNL's remaining inventory of 5 Hour Energy.

28. On January 28, 2008, Living Essentials and CNL, through their respective counsel, reached a final agreement for the purchase of the remaining Product. Living Essentials had signed the agreement and obtained a check for the purchase price.

29. On January 29, 2008, immediately before Living Essentials forwarded the signed agreement and payment to CNL, Living Essentials received calls from two different distributors, both of whom informed Living Essentials that CNL was offering to sell the same inventory of 5 Hour Energy that Living Essentials had agreed to purchase from CNL, at a price substantially lower than the price at which Living Essentials sells to its authorized distributors.

30. That same day, CNL backed out of the deal between Living Essentials and CNL for Living Essentials to buy back the remaining inventory of Living Essentials' Product.

31. Immediately, on January 30, 2008, Living Essentials sought, and obtained a Temporary Restraining Order, prohibiting CNL and anyone acting in concert with CNL, from, among other things, selling, transferring or disposing of the 5 Hour Energy in its possession.

32. Living Essentials served the Temporary Restraining Order on CNL and Ultimate Lifestyles the same day, January 30, 2008.

33. Thus, even though CNL was still negotiating with Living Essentials just the day before (January 29) for Living Essentials to purchase the remaining 5 Hour Energy, when CNL and Ultimate Lifestyles were served with the TRO on January 30, *CNL claimed that it no longer had any remaining 5 Hour Energy*.

**Ultimate Lifestyles' Relationship with CNL.**

34. Upon information and belief, Ultimate Lifestyles has a business relationship, and shares key employees, with Living Essentials' former contract packager, CNL.

35. For example, Ultimate Lifestyles' website features as its Nutritional Biochemist, Alan Jones, who is also the CEO of CNL.

36. Further, as another example, on or about January 11, 2008, and without Living Essentials' authorization, Living Essentials' former contract packager, CNL, through its CEO Alan Jones, sold or offered to sell, large quantities of 5 Hour Energy. In those written offers of sale, Mr. Jones states that he, "authorize[s] Ultimate Lifestyles to sell the product to whomever they desire."

**Sale of Counterfeit 5 Hour Energy by Ultimate Lifestyles.**

37. On or about June 3, 2008, Defendant Ultimate Lifestyles sold or offered to sell for resale to the public, over 125,000 bottles (approximately 14 pallets) of product that was purported to be "5-hour Energy" (the "Counterfeit Goods") to CB Distributors, Inc. ("CB"), at a price far lower than the amount Living Essentials was selling its legitimate Product to its authorized distributors.

38. CB notified Living Essentials of Ultimate Lifestyles' offer to sell the Counterfeit Goods, and subsequently purchased the 14 pallets of Counterfeit Goods from Ultimate Lifestyles. At the time, CB did not know the Counterfeit Goods were counterfeit and believed them to be legitimate 5 Hour Energy.

39. Upon receipt of the Counterfeit Goods from Ultimate Lifestyles, CB turned the Counterfeit Goods over to Living Essentials.

40. Upon Living Essentials' receipt of the Counterfeit Goods sold by Ultimate Lifestyles, Living Essentials inspected and analyzed the products and discovered that the products were counterfeits of the legitimate 5 Hour Energy product.

41. More importantly, the lot numbers on the bottles of the Counterfeit Goods are not valid lot numbers for any legitimate 5 Hour Energy that has been produced to date. Living Essentials is required by federal regulation to, and does have control over, and knowledge of every single lot number for legitimate 5 Hour Energy.

42. Further, the expiration dates identified on the Counterfeit Goods are a calendar year later than any authorized expiration date for legitimate 5 Hour Energy that has been produced to date.

43. Living Essentials also determined that Ultimate Lifestyles obtained the Counterfeit Goods from CNL, Living Essentials' former contract packager.

44. Specifically, Living Essentials' investigation revealed the following:

   a. The contents of the Counterfeit Goods are not legitimate 5 Hour Energy Product, do not conform to specifications, and the contents of the Counterfeit Goods are unknown to Living Essentials. By way of example, Living Essentials sampled the Counterfeit Goods and readily discovered that the Counterfeit Goods did not contain the flavoring agent that is Living Essentials' proprietary flavoring;

   b. The shipping labels on the cartons in which the Counterfeit Goods were shipped included a Lot Number prefix ("R") that is only used by one of Living Essentials' authorized contract packagers for the Product and this packager configures its shipping labels differently;

   c. The shipping labels on the cartons in which the Counterfeit Goods were shipped have the label information configured differently with different typestyle from labels used by Living Essentials' authorized packagers;

   d. The shipping labels on the cartons in which the Counterfeit Goods were shipped include an invalid lot number not matched to any Product authorized to be manufactured by Living Essentials;

  e. The shipping labels on the cartons in which the Counterfeit Goods were shipped include an expiration date that is beyond any expiration date currently used by Living Essentials' contract packagers, or authorized by Living Essentials to be used by its contract packagers;

  f. The shipping labels on the cartons in which the Counterfeit Goods were shipped appear identical to the shipping labels used by the company that CNL formerly used to package Product for Living Essentials;

  g. The bottom of the shipping carton in which the Counterfeit Goods were shipped, bearing the stamp "CNL" is nearly identical to the bottom of the shipping cartons that CNL used to ship 5 Hour Energy when CNL was an authorized contract manufacturer for Living Essentials;

  h. The perforation on the 12-count pack that held the Counterfeit Goods did not conform to the perforation on 12-count packs supplied by Living Essentials' authorized vendors;

  i. The lot numbers on the individual bottles of Counterfeit Product were invalid lot numbers. In Living Essentials' nomenclature, the "R" explicitly refers to a contract packager that is not CNL and, in fact, is located in a different state. The numbers and additional letter in Living Essentials' lot coding nomenclature used by CNL when they were a legitimate contract manufacturer was materially different from the lot coding used by Living Essentials' "R" manufacturer. The CNL lot code had seven characters, all numeric, with no alphabetical characters. The codes used by the "R" manufacturer have 8 characters with both alphabetical and numeric characters. The lot coding used on the counterfeit product would indicate that the product was manufactured in 2008 based on our coding system, but the lot number that was used does not correspond to any authorized lots produced by Living Essentials or any of our legitimate contract packagers;

  j. The labels on the Counterfeit Goods are not currently used in the authorized production of legitimate 5 Hour Energy; and

  k. The Counterfeit Goods also list ingredients that do not match the current formula for legitimate 5 Hour Energy.

  45. The Counterfeit Goods, purporting to be an energy supplement intended to be consumed by the public, over which Living Essentials has no control, poses a potentially serious risk to the health, safety and welfare of the consuming public.

  46. Subsequent to Living Essentials' use of the Mark and the 5 Hour Energy packaging trade dress, with actual knowledge of Living Essentials' use of the 5 Hour Mark and

packaging trade dress, and with the intent to misrepresent the source of the Counterfeit Goods, Ultimate Lifestyles and/or CNL copied, adopted, and is using the 5 Hour Energy Mark and packaging trade dress in connection with the advertising, offering for sale, and sale of a two ounce energy supplement in the United States and in this District.

47. Ultimate Lifestyles and CNL have no consent, license, approval, or authorization to use the 5 Hour Energy Mark or packaging trade dress in connection with their products.

48. Ultimate Lifestyles' use of the famous 5 Hour Energy Mark and packaging trade dress as alleged above clearly shows the willful intent of Ultimate Lifestyles to misrepresent the source of the Counterfeit Goods so as to cause confusion, mistake, or deception as to Ultimate Lifestyles' connection or association with Living Essentials.

## IV. CLAIMS

### COUNT I
### Copyright Infringement

49. Plaintiff Living Essentials realleges and incorporates by reference all paragraphs above, as if fully set forth herein.

50. Living Essentials has a proper federal registration for the copyright of a key portion of its 5 HOUR ENERGY caution label (Registration No. TX 6-833-514) and has exclusive ownership and exclusive rights to use its copyright. (**Exhibit C**).

51. CNL, as Livings Essentials' former contract packager, and Ultimate Lifestyles, through its relationship with Alan Jones, CEO of CNL, and its prior dealings with CNL, both had complete access to Living Essentials' copyrighted goods.

52. Strong similarities probative of copying exist between Living Essentials' copyrighted work and the Counterfeit Goods.

53. The expression on the Counterfeit Goods is substantially similar such that the Living Essentials' copyright to the original has been infringed.

54. CNL and Ultimate Lifestyles' infringement is not protected pursuant to any exceptions under the Copyright Act.

## COUNT II
## Counterfeiting in violation of 15 U.S.C. § 1114(1)(b) (Section 32 of the Lanham Act)

55. Plaintiff Living Essentials realleges and incorporates by reference all paragraphs above, as if fully set forth herein.

56. In violation of 15 U.S.C. §1114(1)(b), Ultimate Lifestyles offered to sell, distributed, sold and/or advertised the Counterfeit Goods bearing a reproduction, counterfeit, copy, or colorable imitation of Living Essentials' Mark for ultimate sale to the public.

57. Upon information and belief, the Counterfeit Goods were manufactured and/or packaged by either Ultimate Lifestyles or CNL.

58. Ultimate Lifestyles' offer to sell, sale, distribution and/or advertisement of the Counterfeit Goods is likely to cause confusion or mistake, or to deceive the public.

59. Ultimate Lifestyles and/or CNL reproduced, counterfeited, copied, or colorably imitated Living Essentials' Mark and applied the reproduction, counterfeit, copy, or colorable imitation to labels, packaging, and wrappers intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and/or advertising of goods which is likely to cause confusion or mistake, or to deceive the public.

60. Ultimate Lifestyles' and/or CNL's actions as described herein were done with Ultimate Lifestyles' and CNL's knowledge that the Counterfeit Goods and the imitation Mark on the Counterfeit Goods were intended to be used to cause confusion or mistake, or to deceive.

61. In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, Ultimate Lifestyles and CNL should be preliminarily and permanently enjoined, upon notice and hearing, from using Plaintiff's Mark, or any confusingly similar variation thereof, alone or in combination with other words, as a trademark, corporate name, trade name component or otherwise, to

market, advertise, distribute, or identify products or services.

62. As a direct and proximate result of Ultimate Lifestyles' and/or CNL's improper actions, Plaintiff Living Essentials has been damaged in an amount within the jurisdictional limits of the Court. Under Section 35 of the Lanham Act, 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendants either: (i) Defendants' profits; (ii) the actual damages sustained by Plaintiff; and (iii) the costs of this action under Section 1117(a); or statutory damages not to exceed $1,000,000 per counterfeit mark per type of goods sold under Section 1117(c), at Plaintiff's election. Due to the knowing, intentional, and purposeful manner of Defendants' conduct, Plaintiff is also entitled to recover damages of treble the amount of Plaintiff's actual damages and attorneys' fees under Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b).

## COUNT III
### Trademark Infringement Under 15 U.S.C. § 1114(1) (Section 32(1) of the Lanham Act)

63. Plaintiff Living Essentials realleges and incorporates by reference all paragraphs above, as if fully set forth herein.

64. Living Essentials has a proper federal registration for the Mark 5 HOUR ENERGY (Registration No. 3003077) (**Exhibit A**), and has exclusive ownership and exclusive rights to use the Mark in commerce.

65. Ultimate Lifestyles and/or CNL infringed upon Living Essentials' exclusive rights to use the Mark by, among other things, placing into commerce by offering to sell, selling and/or distributing counterfeit goods bearing a reproduction, counterfeit, copy or colorable imitation of the Mark without Living Essentials' consent.

66. Such use has caused actual confusion and is likely to continue causing confusion or mistake, or deception of the public.

67. Ultimate Lifestyles' and/or CNL's conduct constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

**PLAINTIFF'S ORIGINAL COMPLAINT — PAGE 12**

68. In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, Ultimate Lifestyles and CNL should be preliminarily and permanently enjoined, upon notice and hearing, from using Plaintiff's Mark, or any confusingly similar variation thereof, alone or in combination with other words, as a trademark, corporate name, trade name component or otherwise, to market, advertise, distribute, or identify products or services.

69. As a direct and proximate result of Ultimate Lifestyles' and/or CNL's improper actions, Plaintiff Living Essentials has been damaged in an amount in excess of $75,000.00, exclusive of interest, costs, and fees. Under Section 35 of the Lanham Act, 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendants either: (i) Defendants' profits; (ii) the actual damages sustained by Plaintiff; and (iii) the costs of this action under Section 1117(a).

70. Due to the knowing, intentional, and purposeful manner of Ultimate Lifestyles' and/or CNL's improper conduct, this is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117, and, therefore, Plaintiff is also entitled to recover damages of treble the amount of Plaintiff's actual damages and attorneys' fees under Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b).

### COUNT IV
### False Designation of Origin or Sponsorship, False Advertising, and Trade Dress Infringement Under 15 U.S.C. §1125(a)

71. Plaintiff Living Essentials realleges and incorporates by reference all paragraphs above, as if fully set forth herein.

72. Living Essentials has a proper federal registration for the Mark 5 HOUR ENERGY (Registration No. 3003077) and has exclusive ownership and exclusive rights to use the Mark in commerce.

73. Living Essential has developed valuable goodwill associated with this Mark.

74. Ultimate Lifestyles and/or CNL knowingly used, and continue to use in

commerce without the permission of Living Essentials, the 5 Hour Energy Mark and packaging trade dress, or counterfeits, reproductions, copies, or colorable imitations thereof, in connection with the products and services that Ultimate Lifestyles and/or CNL manufactures, advertises, promotes and/or sells.

75. Ultimate Lifestyles and/or CNL has used the counterfeits of the 5 Hour Energy Mark and packaging trade dress knowing that the marks used are counterfeits and with the intent to use counterfeits of the 5 Hour Energy Mark and packaging trade dress.

76. Ultimate Lifestyles' and/or CNL's willful and knowing actions render this case exceptional within the meaning of 15 U.S.C. §1117(a).

77. Ultimate Lifestyles and/or CNL has engaged in unfair competition by, among other things, reproducing, counterfeiting, or colorably imitating Living Essentials' Mark in connection with the sale, offering for sale, or distribution of the Counterfeit Goods, which has actually confused and is likely to confuse, mislead or deceive consumers, purchasers and members of the general public as to the origin, source, sponsorship, or affiliation of the Counterfeit Goods.

78. Ultimate Lifestyles' and/or CNL's use of the 5 Hour Energy Mark and packaging trade dress alleged above is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of the Counterfeit Goods and/or Ultimate Lifestyles' and/or CNL's products, and is likely to cause such people to believe in error that the Counterfeit Goods and/or Ultimate Lifestyles' and/or CNL's products have been authorized, sponsored, approved, endorsed or licensed by Living Essentials or that Ultimate Lifestyles and/or CNL is in some way affiliated with Living Essentials or with the 5 Hour Energy brand.

79. Ultimate Lifestyles' and/or CNL's acts constitute false and misleading

descriptions, false advertising, and false designations of the origin and/or sponsorship of the Counterfeit Goods and/or Ultimate Lifestyles' and/or CNL's products, and constitutes trade dress infringement in violation of 15 U.S.C. §1125(a).

80. By reason of Ultimate Lifestyles' and/or CNL's actions, Living Essentials has suffered irreparable harm to the valuable 5 Hour Energy Mark and packaging trade dress. Unless Ultimate Lifestyles and CNL are restrained from its actions, Living Essentials will continue to be irreparably harmed for which there is no adequate remedy at law.

81. In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, Ultimate Lifestyles and CNL should be preliminarily and permanently enjoined, upon notice and hearing, from using Plaintiff's Mark, or any confusingly similar variation thereof, alone or in combination with other words, as a trademark, corporate name, trade name component or otherwise, to market, advertise, distribute, or identify products or services.

82. As a direct and proximate result of Ultimate Lifestyles' and/or CNL's improper actions, Plaintiff Living Essentials has been damaged in an amount within the jurisdictional limits of the Court. Under Section 35 of the Lanham Act, 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendants (i) Defendants' profits; (ii) the actual damages sustained by Plaintiff; and (iii) the costs of this action.

83. Due to the knowing, intentional, and purposeful manner of Ultimate Lifestyles' and/or CNL's improper conduct, this is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117, and, therefore, Plaintiff is also entitled to recover damages of treble the amount of Plaintiff's actual damages and attorneys' fees under Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b).

## COUNT V
### Unjust Enrichment

84. Plaintiff Living Essentials realleges and incorporates by reference all paragraphs

above, as if fully set forth herein.

85. Ultimate Lifestyles and/or CNL have received financial benefit from the sale of Counterfeit Goods bearing Living Essentials' Mark.

86. These sales of Counterfeit Goods, at prices far lower than legitimate 5 Hour Energy is sold, has caused serious price erosion, and negatively impacted Living Essentials' receipts and profits.

87. As a result, Ultimate Lifestyles and/or CNL have been unjustly enriched and it is only fair and equitable for this Court to require Ultimate Lifestyles and CNL to pay Living Essentials for the benefits that Ultimate Lifestyles and CNL received from the unauthorized use of Living Essentials' Mark.

88. As a direct and proximate result of Defendant Ultimate Lifestyles' and/or CNL's wrongful conduct, Plaintiff Living Essentials has been damaged in an amount in excess of $75,000, exclusive of interest, costs, and fees.

## COUNT VI
### Tortious Interference with Prospective Contractual Relations

89. Plaintiff Living Essentials realleges and incorporates by reference all paragraphs above, as if fully set forth herein.

90. There was a reasonable probability that Living Essentials would have entered into prospective business relationships with its customers, retailers, authorized distributors, and other third parties. Ultimate Lifestyles was aware that Living Essentials had business relationships and prospective business relations with Living Essentials' customers, retailers, authorized distributors, and additional third parties.

91. As set forth in more detail above, Ultimate Lifestyles' and/or CNL's improper acts were independently tortious or wrongful, and Ultimate Lifestyles and/or CNL intentionally and improperly interfered with the business relationships and prospective business relationships

between Living Essentials and its customers, retailers, distributors, and other third parties by, among other things, wrongfully making, offering for sale, and/or selling the Counterfeit Goods.

92. Living Essentials had a reasonable likelihood of future economic benefit from its business relationships and prospective business relationships.

93. Ultimate Lifestyles and/or CNL acted intentionally so as to, and did, interfere with Living Essentials' business relationships and expectancies, causing their breach, disruption, or termination.

94. As a direct and proximate result of Ultimate Lifestyles' and/or CNL's tortious interference, Living Essentials has suffered substantial economic injury, including but not limited loss of profits, loss of goodwill, harm to its business reputation, loss of esteem and standing in the community, and loss of business opportunities.

95. Due to the knowing, intentional, and malicious nature of Ultimate Lifestyle's and/or CNL's improper acts, as outlined above, Living Essentials is entitled to exemplary damages.

## COUNT VII
### Common Law Trademark Infringement and Unfair Competition

96. Plaintiff Living Essentials realleges and incorporates by reference all paragraphs above, as if fully set forth herein.

97. Living Essentials had the proper and exclusive right to use its Mark in connection with its goods.

98. Ultimate Lifestyles and/or CNL willfully utilized Living Essentials' Mark for the sale, offer of sale, or distribution of Counterfeit Goods bearing a reproduction, counterfeit, copy or colorable imitation of the Mark in commerce and has caused actual confusion and/or more than a mere possibility of confusion.

99. Ultimate Lifestyle's and/or CNL's adoption and use of Living Essentials' Mark in

connection with Ultimate Lifestyles' and/or CNL's manufacture, distribution, offer to sell, or sale of Counterfeit Goods constitutes common law trademark infringement and unfair competition under the trademark and unfair competition laws of Texas.

100. Ultimate Lifestyles' and/or CNL's actions, conduct, and practices described above have at all times been willful and/or knowing.

101. As a direct and proximate result of Ultimate Lifestyles' and/or CNL's activities, Living Essentials has sustained damages in excess of $75,000, and is entitled to injunctive and monetary relief, including but not limited to increased damages and profits, exemplary damages, and costs and attorneys' fees, in an amount to be determined at trial.

## V. DEMAND FOR JURY TRIAL

102. In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Living Essentials demands trial by jury in this action.

## VI. REQUEST FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Living Essentials respectfully requests that this Court enter one or more orders and judgments granting the following relief:

A. Preliminarily and then permanently enjoin Ultimate Lifestyles and CNL from the following:

1) manufacturing, marketing, or selling products or offering services based on or derived from Living Essentials' trade secrets and proprietary confidential information;

2) manufacturing, marketing, or selling products, or offering services based, bearing, or incorporating in, or derived from Living Essentials' registered trademarks and packaging trade dress; and

3) using Plaintiff's Mark or any confusingly similar variation thereof, alone

      or in combination with other words, as a trademark, service mark, corporate name, trade name component or otherwise, to market, advertise, or identify Defendants' services or products;

B.    Ordering Ultimate Lifestyles and CNL to forthwith deliver to Living Essentials all materials in Ultimate Lifestyles' and CNL's possession, custody or control, the possession and/or use of which would violate Living Essentials' proprietary rights including, without limitation, its right to the Mark and 5 Hour Energy packaging trade dress;

C.    Ordering Ultimate Lifestyles and CNL to prepare, at their sole expense, a true and accurate audited accounting of all of the activities and assets of Ultimate Lifestyles and CNL including, without limitation, all activities related to their acquisition and disposal, sale or transfer of the Counterfeit Goods or any other product bearing Living Essentials' trademark or incorporating Living Essentials' proprietary rights;

D.    An award of Plaintiff's actual and special damages as pleaded within the jurisdictional limits of the Court;

E.    Award Plaintiff Defendants' ill-gotten profits and treble damages under 15 U.S.C. § 1117;

F.    An award of exemplary damages against Ultimate Lifestyles and CNL;

G.    Declare this case to be exceptional and award Plaintiff its reasonable and necessary attorney's fees and court costs in prosecuting this action;

H.    An award of costs, interest, and attorney's fees in an amount to be determined by the Court;

I.    Ordering Ultimate Lifestyles and CNL to indemnify and hold harmless Living Essentials' against any and all possible claims of third parties arising out of the

sale, offer of sale, distribution or use of the Counterfeit Goods; and

J. Award Plaintiff such further relief, legal and equitable, to which it is justly entitled.

Dated: June 26, 2008

By: _____
Patrick W. Powers, Attorney-in-Charge
State Bar No. 24013351
patrick@ckptlaw.com

CASH KLEMCHUK POWERS TAYLOR
8150 North Central Expressway, Suite 1575
Dallas, Texas 75206
Tel. 214.239.8900
Fax. 214.239.8901

**Of Counsel:**
Darin Klemchuk
State Bar No. 24002418
darin@ckptlaw.com
James J. Doyle, III
State Bar No. 24036501
james.doyle@ckptlaw.com
CASH KLEMCHUK POWERS TAYLOR
8150 North Central Expressway, Suite 1575
Dallas, Texas 75206
Tel. 214.239.8900
Fax. 214.239.8901

COUNSEL FOR PLAINTIFF INNOVATION VENTURES